UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DEXTER WASHINGTON,

          Plaintiff,

 - against -            **OPINION & ORDER**

DANIEL J. BALLETTO, TROOPER; RAY A.    No. 19-CV-11949 (CS)
WICKENHEISER, DIRECTOR; RACHEAL
STUBBS, SCIENTIST III; MICHAEL A.
JANKOWIAK, CAPTAIN,

          Defendants.
-------------------------------------------------------------x

Appearances:

Dexter Washington
New York, New York
*Pro Se Plaintiff*

Rebecca L. Johannesen
Assistant Attorney General
Office of the New York State Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

 Before the Court is Defendants' Motion to Dismiss. (Doc. 33.) For the reasons set forth below, Defendants' Motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

 For purposes of the instant motion, the Court accepts as true the facts, but not the conclusions, as set forth in Plaintiff's Amended Complaint, (Doc. 27 ("AC")), Initial Complaint (Doc. 2 ("IC")), and opposition to the motion to dismiss, (Doc. 41). *See Washington v. Westchester Cnty. Dep't of Correction*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y.

Jan. 30, 2015) (court may consider facts from *pro se* plaintiff's original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]

### 1. State Trooper Daniel Balletto and the Initial Arrest

On April 21, 2019, Plaintiff Dexter Washington was pulled over by Defendant State Trooper Daniel Balletto for an alleged traffic violation. (AC at 1.) After being ordered to exit the vehicle and allegedly failing various roadside sobriety tests, Plaintiff was arrested and transported to the Trooper Barracks in Clarkstown, New York. (*Id.* at 1-2; IC at 4.)[2] Plaintiff states that Balletto did not conduct a breathalyzer test during the initial arrest, but at the Trooper Barracks a breathalyzer indicated that his blood-alcohol level was 0.12. (AC at 1-2; IC at 4.)[3]

Balletto searched Plaintiff's vehicle on the grounds that he and his partner smelled a strong odor of alcohol and marijuana emanating from Plaintiff's car, and observed open containers of alcohol, when they initially pulled him over. (AC at 2; IC at 4.) In the car Balletto discovered suspected marijuana and heroin, as well as glassine envelopes, scales and rubber bands, (AC at 1-3), but Plaintiff alleges that Balletto neither saved nor documented the alleged

---

[1] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[2] Citations to page numbers in the IC refer to page numbers generated by the Court's Electronic Filing System.

[3] The AC indicates that Plaintiff's blood-alcohol level was "0.012," (AC at 1), but the IC states it was "0.12," (IC at 4). The latter makes sense in context so the Court presumes the former is a typographical error.

open bottles, and did not conduct a drug test, such as a "NIK" test,[4] at the scene to confirm his suspicions about the seized substances. (*Id.* at 3.) Instead, Balletto relied on his "training and experience" to determine that Plaintiff had possessed drugs and drug paraphernalia. (*Id.*)

### 2. Mid-Hudson Satellite Crime Laboratory

In response to a "Rush Request" by the Rockland County District Attorney ("DA"), in which the DA requested qualitative and quantitative analysis "ASAP," Defendant Rachel Stubbs, an employee of the Mid-Hudson Satellite Crime Laboratory, analyzed the samples obtained during the arrest. (*See id.* at 4-5.) On May 28, 2019, she reported that two seized plastic bags contained approximately 57 grams of marijuana, and another seized plastic bag contained approximately 9 grams of fentanyl and acetyl fentanyl. (*Id.* at 4; IC at 24.) In a report dated June 30, 2019, she reported that she had tested 43 of the glassine envelopes, roughly 5% of the 883 envelopes seized at the time of the arrest, and that all contained fentanyl and acetyl fentanyl. (AC at 4-5; IC at 25.) Utilizing a hypergeometric approach to statistical sampling, she concluded with 99% confidence that "the seven hundred and ninety-four (794) glassine envelopes" contained between 57.73 and 64.05 grams of fentanyl and acetyl fentanyl. (AC at 4; IC at 25.) She did not explain why she opined about 794 envelopes rather than 840 (the difference between 883 and 43). Plaintiff contends that the testing methodology was fundamentally flawed. (AC at 5; IC at 24-25.)

Plaintiff wrote a letter to Defendant Ray A. Wickenheiser, Executive Director of the Mid-Hudson Satellite Crime Laboratory, complaining about Stubbs and urging him to investigate. (AC at 6; IC at 18.) Wickenheiser delegated the matter to Defendant Michael A. Jankowiak, a

---

[4] It is the Court's understanding that NIK is a kit for field-testing suspected narcotics. (*See* AC at 3.)

3

Captain at the Forensic Investigation Center. (AC at 6-7; IC at 18.) Jankowiak investigated and responded to Plaintiff stating that Stubbs had followed proper protocol. (IC at 19-20; AC at 7.) After further correspondence, Jankowiak informed Plaintiff to direct all further questions to his attorney and stopped responding to additional letters sent by Plaintiff. (IC at 18-20.) Plaintiff then wrote to Wickenheiser again, this time complaining about both Stubbs and Jankowiak, but Wickenheiser did not respond. (AC at 6; IC at 18-19.)

Plaintiff was indicted by a Rockland County grand jury for three counts of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of Marijuana in the Fourth Degree, three counts of Criminally Using Drug Paraphernalia in the Second Degree, and two counts of Driving While Intoxicated. (IC at 26-30.) Defendants represent, and Plaintiff does not dispute, that his criminal case is ongoing.

### B. **Procedural History**

Plaintiff's Initial Complaint, filed December 26, 2019, sued all four Defendants in their official and individual capacities, and brought claims for denial of due process, false imprisonment, false arrest, and gross negligence arising out of the arrest on April 21, 2019 and the treatment of evidence collected on that day. Plaintiff appears to seek money damages as well as injunctive or declaratory relief. (*See, e.g.*, IC at 5, 7-8, 11, 17.) At the pre-motion conference on June 23, 2020, the Court granted Plaintiff leave to amend his complaint, which he did on July 30, 2020. The Court construes the AC as setting forth the same causes of action as the IC. On September 25, 2020, Defendants brought the instant motion to dismiss. (Doc. 33.) Plaintiff filed his response on December 29, 2020. (Doc. 41.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up).

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (cleaned up).

### B. *Pro Se* **Plaintiffs**

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (cleaned up), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

## III. DISCUSSION

### A. *Younger* **Abstention**

Defendants argue that the Court should abstain from deciding this case under the doctrine first outlined in *Younger v. Harris*, 401 U.S. 37 (1971), which holds that "'federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings.'" *Toczek v. Alvord*, 841 F. App'x 263, 265-66 (2d Cir. 2021) (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)).

In a 2013 decision, the Supreme Court made clear that lower courts should abstain under *Younger* "only in three 'exceptional circumstances' that 'define *Younger*'s scope:' (1) pending state criminal proceedings; (2) civil enforcement proceedings that are 'akin to criminal

prosecutions'; and (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting *Sprint Comm'cns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)).

Here, it is undisputed that there is an ongoing criminal case against Plaintiff in Rockland County Court, and "[t]he instant action is based upon events alleged to have occurred in connection with the investigation, arrest, and prosecution of him in that criminal case." *Saunders v. Flanagan*, 62 F. Supp. 2d 629, 633 (D. Conn. 1999). "[T]he propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by the state tribunals." *Perez v. Ledesma*, 401 U.S. 82, 84 (1971). Plaintiff's allegations of mishandling of evidence and improper drug testing procedures are therefore "particularly appropriate" for review by the state court in his pending criminal proceeding. *Saunders*, 62 F. Supp. 2d at 633. "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 394 (2d Cir. 1995). Plaintiff has not suggested any reason why he cannot raise the merits of his constitutional claims in state court either to the judge before trial or on direct appeal if he is convicted.

    **B.**    <u>**Exceptions to *Younger***</u>

The *Younger* line of cases has nevertheless "established circumstances where it would be inappropriate for a federal district court to stay its hand pending disposition of related state proceedings." *Toback v. City of Long Beach,* 948 F. Supp. 167, 171 (E.D.N.Y. 1996) (cleaned up). These exceptions are limited, however, and "represent a very narrow gate for federal intervention in pending state criminal proceedings," *Saunders*, 62 F. Supp. 2d at 634 (cleaned

up), "because a pending state prosecution usually provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights," *id.*

Relevant here, a federal court may exercise jurisdiction despite the *Younger* doctrine if the plaintiff can make a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54 (1971). "[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome[,] . . . [and] the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) (cleaned up).

Plaintiff has not shown that bad faith is present here. Rather, Plaintiff seems to allege bad faith for reasons such as the drug sampling request being labeled "rush," the drug laboratory not sampling every substance, and Balletto stating that the felony complaints against Plaintiff were based on his "Direct Knowledge" despite failing to conduct a NIK-test on site. (AC at 3-5.)[5] The Court does not regard these facts as improper, let alone sufficient to suggest bad faith. Nor does Plaintiff suggest any history between himself and Defendants, or any other facts, that would support a retaliatory or harassing motive on their parts. Bad faith is an all but impossible bar to clear, *see Edwards v. Troy Police Dep't*, No. 19-CV-543, 2019 WL 3491244, at *1 n.2 (N.D.N.Y. Aug. 1, 2019), and Plaintiff does not come close to doing so. He posits nothing more than the commonplace situation in which a criminal defendant challenges the legality of the

---

[5] The felony complaints have a statement at the bottom reading, "The above allegations of fact are made by the Complainant herein on _____." (IC at 22-23.) Balletto filled in "Direct Knowledge." (*Id.*) In the portion of the documents describing the factual basis for the offense, he wrote, "The heroin was identified through my training and experience." (*Id.*) There was thus no misrepresentation that the drugs had been tested.

8

seizure of evidence or the sufficiency of the proof – positions "incidental to [many] criminal proceeding[s] brought lawfully and in good faith." *Younger*, 401 U.S. at 49; *see Diamond "D" Const. Corp.*, 282 F.3d at 199 ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution – even when the violations of constitutional rights are egregious – will not warrant the application of the bad faith exception.").

Accordingly, because Plaintiff does not plead facts that plausibly show bad faith, harassment, or that the state proceeding cannot offer him a fair and full adjudication of his claims, the bad faith exception to *Younger* does not apply. *See, e.g.*, *see Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 710 n.27 (S.D.N.Y. 2011); *Sica v. Connecticut*, 331 F. Supp. 2d 82, 86 (D. Conn. 2004). Thus Plaintiff's claims for declaratory and injunctive relief must be dismissed.

### C. **Monetary Damages**

"Unlike claims for declaratory and injunctive relief, the Second Circuit has held that claims for monetary damages should not be dismissed under *Younger* abstention." *Henderson v. Fludd*, No. 19-CV-02675, 2019 WL 4306376, at *3 (E.D.N.Y. Sept. 11, 2019); *see Morpurgo v. Inc. Vill. of Sag Harbor*, 327 F. App'x 284, 286 (2d Cir. 2009) (summary order); *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001); *Kirschner*, 225 F.3d at 238. Where the "plaintiff's claims are closely intertwined with the on-going criminal case," however, litigating those claims in a federal proceeding "would be premature." *Henderson*, 2019 WL 4306376, at *3. As an alternative, courts within this circuit often stay claims for damages pending the conclusion of the underlying criminal case, and I find it appropriate to do so here. *See, e.g.*, *Sitts v. Otsego Cnty. Court*, No. 20-CV-1583, 2021 WL 1342410, at *6 (N.D.N.Y. Jan. 13, 2021), *report and recommendation adopted*, 2021 WL 1341927 (Apr. 9, 2021); *Henderson*, 2019 WL 4306376, at

9

*3; *McKeever v. Singas*, No. 19-CV-1756, 2019 WL 2646574, at *3 (E.D.N.Y. June 26, 2019), *appeal dismissed*, No. 19-2079, 2019 WL 7489060 (2d Cir. Nov. 14, 2019).

The heart of this lawsuit is that Plaintiff challenges the validity of the pending state criminal prosecution against him and seeks damages on that basis. (*See* AC at 5.) Plaintiff alleges that Defendants documented evidence incorrectly, utilized improper techniques, and purposefully rushed Plaintiff's samples. (*See id.* at 3-5.) Defendants in this action are the witnesses and investigators in Plaintiff's state criminal proceedings, and the civil and criminal actions both arise out of the same facts and present the same issues. Any decision on the issues in this civil action "might undermine [Plaintiff's] Fifth Amendment privilege against self-incrimination, expand the rights of criminal discovery beyond the limits of [state law], [or] expose the basis of the defense to the prosecution in advance of trial or otherwise prejudice the case." *In re Par Pharmaceutical, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990). Thus, until the prosecution is complete, "'it is simply impossible to make any reasoned evaluation of plaintiff's claim that he may have been deprived of the opportunity to secure a fair trial by reason of the defendants' actions.'" *Saunders*, 62 F. Supp. 2d at 637 (cleaned up).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. To the extent Plaintiff seeks injunctive or declaratory relief, his claims are dismissed without prejudice. Plaintiff's claims seeking monetary damages are stayed pending the conclusion of the underlying

criminal case.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 33), and administratively close this case.[6]

**SO ORDERED.**

Dated: July 1, 2021
       White Plains, New York

                                                            _____
                                                            CATHY SEIBEL, U.S.D.J.

---

[6] Within two (2) weeks of the conclusion of his state court criminal proceedings, Plaintiff may request in writing that this case be re-opened if warranted at that time.  *See Henderson*, 2019 WL 4306376, at *3; *McKeever*, 2019 WL 2646574, at *4.